UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 17-cr-0217 (WMW/LIB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Chelsea Marie Deserly, | |
| Defendant. | |

---

This matter is before the Court on the December 5, 2017 Report and Recommendation (R&R) of United States Magistrate Judge Leo I. Brisbois. (Dkt. 33.) The R&R recommends denying Defendant Chelsea Marie Deserly's motion to suppress statements Deserly made to law enforcement officers and her motion to suppress evidence obtained from a warrantless blood draw. Deserly filed a timely objection to the recommendation that the Court deny her motion to suppress evidence obtained from the warrantless blood draw.[1] Because Deserly voluntarily consented to the warrantless blood draw, the Court overrules Deserly's objection and adopts the R&R.

## BACKGROUND[2]

On May 16, 2015, Red Lake Police Lieutenant Alexandra Dow responded to a motor vehicle accident on the Red Lake Indian Reservation. Upon arrival, Lieutenant

---

[1] The government filed a response to Deserly's objection on January 11, 2018. Because Deserly filed her objection to the R&R on December 19, 2017, however, the government's response is untimely and will not be considered. *See* LR 72.2(b)(2) (providing that a party may respond to another party's objection within 14 days after being served with a copy of that objection).

[2] The relevant factual and procedural background is addressed in detail in the R&R and need not be repeated at length.

Dow observed a red pickup truck and several people surrounding an individual on the ground, who was later identified as Murphy Thomas. Lieutenant Dow also saw Deserly crying near Thomas's feet. Because Thomas was unresponsive and Deserly reported that "her head hurt," both were transported by ambulance to the hospital. According to Lieutenant Dow, Deserly "walked . . . on her own" and boarded the ambulance. Lieutenant Dow directed another officer to escort the ambulance to the hospital and secure blood draws from both Thomas and Deserly.

After arriving at the hospital and learning that Thomas had died, Lieutenant Dow located Deserly. She observed Deserly "fighting with [a] neck brace" as the nurses were attempting to place it on her. Because Deserly was agitated, Lieutenant Dow assisted the nurses in their effort to restrain Deserly, place the neck brace, and calm her. While rendering assistance, Lieutenant Dow detected that Deserly smelled of alcohol. Lieutenant Dow subsequently asked Deserly whether she was "willing to submit to a blood draw." Deserly responded "Yeah." A nurse reviewed with Deserly a "checklist" and asked whether Deserly was willing to submit to a blood draw. Deserly again responded "yes," and the nurse performed the blood draw.

On August 23, 2017, Deserly was charged with two counts of involuntary manslaughter. Deserly now moves to suppress statements that she made to law enforcement officers during their investigation and to suppress evidence obtained from the warrantless blood draw.

## ANALYSIS

Deserly objects to the magistrate judge's recommendation to deny the motion to suppress evidence obtained from the warrantless blood draw. Deserly argues that her

2

motion should be granted because the record demonstrates that her consent was not voluntarily. The Court reviews this objection de novo. *See* 28 U.S.C. § 636(b)(1)(C); *accord* LR 72.2(b)(3).

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV; *see also United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005) (holding tribal police operating in Indian country to the same legal requirements as those imposed by the Fourth Amendment). A compelled intrusion into the body to obtain blood for analysis of its contents is a search protected by the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616 (1989). Although a warrantless search presumptively violates the Fourth Amendment, voluntary consent is a well-recognized exception to the warrant requirement. *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010).

The government must establish, by a preponderance of the evidence, that consent was freely given. *Id.* Whether a suspect's consent was voluntarily given presents a question of fact that turns on a totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). An analysis of the totality of the circumstances examines both the characteristics of the suspect and the environment in which the consent is given. *See United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009) (listing non-exhaustive factors, including a suspect's age, intelligence, intoxication, prior experience with the legal system, length of detention, and custodial status along with whether consent was given in a public or secluded place, whether the individual objected to the eventual search, and whether there were misrepresentations by police). Consent is voluntary when the person suspected of criminal activity has "a reasonable appreciation of the nature and

3

significance" of his or her actions, *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007) (internal quotation marks omitted), and a "reasonable person" would believe consent was given, *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

Deserly contends that she did not voluntarily consent to the warrantless blood draw because she was extremely intoxicated, was traumatized from the car accident, and had to be restrained to avoid self-harm. Deserly's argument is unpersuasive. After the motor vehicle accident, Deserly responded coherently to inquiries about the circumstances of the accident, accurately reported her medical condition, and walked to a nearby ambulance. These actions undermine Deserly's contention that her degree of intoxication prevented her from providing voluntary consent. *See, e.g.*, *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008) (determining that the "fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary" (internal quotation marks omitted)). Deserly was not detained, threatened, intimidated, or promised anything in return for her consent. *See Saenz*, 474 F.3d at 1137 (observing that an officer is not required to provide *Miranda* warning prior to requesting consent to search); *United States v. Esquivias*, 416 F.3d 696, 701 (8th Cir. 2005) (reasoning that a defendant need not be aware or informed of right to refuse for consent to be voluntary). And contrary to her assertion, Deserly did not consent to a blood draw "[i]n the midst" of her agitation as to the placement of the neck brace. Instead, the record reflects that, after she calmed down, Deserly twice consented to the blood draw without any objection— first to Lieutenant Dow and a second time to the nurse who performed the blood draw.

In summary, because a preponderance of the evidence establishes that a reasonable person would believe that Deserly voluntarily consented to the warrantless blood draw, Deserly's objection to this aspect of the R&R is overruled.[3]

Deserly does not object to any other aspect of the R&R. Accordingly, the Court reviews the remainder of the R&R for clear error. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Having carefully performed this review of those aspects of the R&R to which Deserly does not object, the Court finds no clear error and accepts the recommendations.

## ORDER

Based on the foregoing analysis, the R&R, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Chelsea Marie Deserly's objection to the R&R, (Dkt. 34), is **OVERRULED**;

2. The December 5, 2017 R&R, (Dkt. 33), is **ADOPTED**;

3. Defendant Chelsea Marie Deserly's Motion to Suppress Statements, Admissions and Answers, (Dkt. 16), is **DENIED**; and

---

[3] Arguing that "ample case law" supports her objection, Deserly cites *State v. Bowman*, 787 S.E.2d 284 (Ga. Ct. App. 2016) and *State v. Butler*, 302 P.3d 609 (Ariz. 2013). But neither case is controlling authority, and both cases are distinguishable. The record here does not establish the degree of intoxication that the *Bowman* court considered when concluding that the defendant was incapable of providing voluntary consent. *See* 787 S.E.2d at 286, 289 (describing defendant as unsteady on his feet with blood-shot eyes and slurred speech, making "nonsensical" statements, and vomiting during police transport). And, unlike the defendant in *Butler*, Deserly is not a minor who was detained for more than two hours before being arrested and advised that she must consent. *See* 302 P.3d at 613-14.

4.     Defendant Chelsea Marie Deserly's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, (Dkt. 17), is **DENIED**.

Dated:  February 7, 2018                             s/Wilhelmina M. Wright
                                                     Wilhelmina M. Wright
                                                     United States District Judge